Joel P. Hoxie (#005448)
Melissa M. Krueger (#021176)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
jhoxie@swlaw.com
mkrueger@swlaw.com

G. Lee Garrett, Jr.
David M. Monde
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
ggarrett@jonesday.com
dmonde@jonesday.com

Attorneys for Plaintiff Mesa Air Group, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mesa Air Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Delta Air Lines, Inc., <br><br> Defendant. | No. <br><br> **VERIFIED COMPLAINT** |

Mesa Air Group, Inc. ("Mesa"), for its Verified Complaint against Defendant Delta Air Lines, Inc. ("Delta"), alleges as follows:

### INTRODUCTION

1. Mesa operates for Delta regional jet aircraft under a code-sharing arrangement and long-term contracts, called the Delta Connection Agreements. Mesa also operates as a regional jet carrier under code-sharing agreements with USAirways and United Airlines, and operates flights under the Mesa Airlines and go! brands.

2. Delta, through its Delta TechOps division, provides jet engine maintenance and support services to airlines, including Mesa.

3. Operating under a Memorandum of Understanding drafted by Delta that was terminable at will by Delta or Mesa, a dispute over invoices for engine maintenance and support services arose between the parties after Mesa terminated the Memorandum of Understanding.

4. Recognizing that it had struck a bad deal with its Memorandum of Understanding, Delta unlawfully holds Mesa's engines hostage by refusing to return the engines to Mesa. Delta has also stopped any further work on certain of those engines in an apparent attempt to pressure Mesa to make payments that are not covered by the Memorandum of Understanding.

5. Despite Mesa's written demand for return of the engines and Mesa's payment to Delta of all sums due, minus credits due Mesa – and recognizing how critical the engines are to Mesa's operations and its regional carrier contracts with other airlines – Delta refuses to return the engines.

6. Delta has failed to institute foreclosure proceedings after receiving Mesa's written demand, and the time within which Delta may do so under Georgia law has expired. Because Delta has thus forfeited any lien it has asserted through its retention of the engines, its continued possession of the engines is unlawful as a matter of law.

7. Delta's unlawful possession of the engines has jeopardized Mesa's operations and its regional carrier contracts with other airlines and will cause Mesa severe and irreparable harm. Mesa thus seeks a mandatory preliminary and permanent injunction ordering Delta to immediately return all engines to Mesa, and a preliminary injunction hearing as soon as reasonably possible. Mesa also seeks damages and attorneys' fees for Delta's bad-faith refusal to return the engines.

**PARTIES**

8. Plaintiff Mesa Air Group, Inc. is a Nevada corporation with its principal place of business in Phoenix, Arizona.

9.     Defendant Delta Air Lines, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. Delta may be served in the State of Arizona through its registered statutory agent for service of process, Corporation Service Company, 2338 W. Royal Palm Road, Suite-J, Phoenix, Arizona 85021.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties, and the matter in controversy exceeds $75,000, exclusive of interest and costs. Delta is authorized to transact and does transact business in the State of Arizona and is subject to the personal jurisdiction of this Court.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c).

## GENERAL ALLEGATIONS

### The MOU

12.    In early 2007, Mesa and Delta engaged in discussions and negotiations concerning Delta acting as the exclusive provider to Mesa of engine maintenance and support services for certain jet engines owned or leased by Mesa and installed on aircraft operated by Mesa.

13.    On or about March 15, 2007, Mesa and Delta executed a Memorandum of Understanding (the "MOU") that outlined the terms and conditions to be incorporated into the engine services contract contemplated by the parties. A true and correct copy of the MOU is attached hereto as Exhibit A.

14.    Under the MOU, compensation for Delta's services is based on a power-by-the-hour or "PBH" calculation. (MOU ¶ 2.) Non-PBH engines are serviced by Delta on a time-and-materials or "T&M" basis.

15.    The MOU – which was drafted by Delta – is governed by Georgia law and expressly states that Georgia law would also govern the contract contemplated by the parties. (*See* MOU ¶ 10.)

16. The MOU is non-binding and expressly states that it "does not create any legally binding obligation on either party …" (MOU ¶ 11.) The MOU also states that "either party shall have the right to terminate this MOU or negotiations toward the Contract prior to its execution, *at any time, without further liability or obligation to the other party.*" (MOU ¶ 11) (emphasis added).

17. The parties did not enter into the contract contemplated by the MOU, but did operate under the terms and conditions of the MOU until its termination by Mesa on June 12, 2008. A true and correct copy of Mesa's June 12, 2008 termination letter is attached hereto as Exhibit B.

18. To date, Mesa has paid Delta more than $25 million for engine maintenance and support services rendered under the MOU.

### **Delta Unlawfully Retains Possession of Mesa's Engines**

19. Prior to April 2008, Mesa shipped engines to Delta, Delta serviced the engines and, when service was complete, returned the engines to Mesa.

20. Between April 2008 and June 10, 2008, Mesa shipped seven aircraft engines to Delta for service under the MOU. The serial numbers for these seven engines are: 194234; 194287; 194495; 872293; 872093; 965370; and 965387 (collectively, the "Engines").

21. Mesa owns or leases the Engines and has an unconditional and absolute right of possession in the Engines. The Engines have an approximate total value of $25 million.

22. After Mesa terminated the MOU, a dispute arose between the parties in connection with Delta's MOU invoices for April, May, and June 2008.

23. Throughout the parties' attempts to resolve the invoice dispute, Delta refused to return the Engines to Mesa, including the Engines that were serviced and ready for return to Mesa. Delta has either stopped working or has significantly reduced its work on the Engines currently being serviced. Delta stated to Mesa that it will continue to hold the Engines as "leverage" until all disputes are resolved.

24. Mesa repeatedly explained to Delta how critical the Engines are to Mesa's operations. Mesa has no spare engines for any of its aircraft. The Engines are the only suitable and viable source of spare engines that Mesa has. Despite substantial ongoing efforts, Mesa has been unable to procure any suitable spare engines on the open market. Consequently, if a scheduled or an unscheduled engine event (*e.g.*, mechanical failure) occurs on one of Mesa's aircraft currently in service, Delta's unlawful possession of the Engines will force Mesa to ground any such aircraft and will jeopardize Mesa's operations and its regional carrier contracts with other airlines.

25. On July 15, 2008, Mesa paid Delta the April PBH invoice in full ($2,663,429.25). Delta subsequently returned to Mesa one engine that is not the subject of this lawsuit, but still refused to return any of the Engines that have been repaired.

26. On July 24, 2008, Mesa's President and Chief Operating Officer, Mike Lotz, emailed Delta and demanded immediate return of the Engines. Mesa's demand also confirmed to Delta that Mesa will pay the May and June (through June 11, the effective date of termination of the MOU) PBH invoices, minus credits due Mesa. Mesa expressly disputed Delta's alleged right to any further amounts. Mesa also requested that Delta forward an invoice for one of the Engines that has been repaired on a T&M basis. Mesa stated that it is prepared to pay that invoice. A true and correct copy of Mr. Lotz's July 24, 2008 email is attached hereto as Exhibit C.

27. Delta continues to refuse to return the Engines. On July 28, 2008, Delta's Jack Turnbill responded to Mesa's demand and stated that Delta will continue to "take whatever steps are necessary to protect [its] interests." A true and correct copy of Mr. Turnbill's July 28, 2008 email is attached hereto as Exhibit D.

28. On July 30, 2008, Mesa paid Delta the May and June 1-11 PBH invoices in the amount of $2,620,591 ($3,879,237 minus credits of $1,258,646 due Mesa).

29. Delta has failed to institute foreclosure proceedings after receiving Mesa's written demand, and the time within which Delta may do so under Georgia law has

expired. Accordingly, Delta has forfeited any lien it has asserted through its retention of the Engines.

30. Unfortunately, this is not the first time Mesa has been forced to sue Delta for its bad faith conduct. On June 25, 2008, the United States District Court for the Northern District of Georgia, Case No. 1:08-CV-1334-CC, entered an Order granting Mesa's Motion for Preliminary Injunction and preliminarily enjoining Delta's wrongful termination of a Delta Connection Agreement. A true and correct copy of the district court's June 25, 2008 Order is attached hereto as Exhibit E.

## CAUSES OF ACTION

### Count I – Claim of Trover (O.C.G.A. § 44-12-151(3))

31. Mesa incorporates and realleges the preceding paragraphs of this complaint as though fully set forth here.

32. Under Georgia law, Delta's retention of the Engines is unlawful and Mesa is entitled to immediate return of the Engines.

33. As described above, Delta has custody and control of the Engines, bearing serial numbers: 194234; 194287; 194495; 872293; 872093; 965370; and 965387. The Engines were shipped to Delta between April and June 2008 for service by Delta.

34. Mesa owns or leases the Engines and has an absolute and unconditional right of possession in the Engines.

35. Mesa expressly disputed that Delta is entitled to any further payments and demanded in writing that Delta return the Engines.

36. Delta has refused to return the Engines and has retained custody and control of the Engines.

37. Delta has failed to institute foreclosure proceedings after receiving Mesa's written demand, and the time within which Delta may do so under Georgia law (within 10 days after receipt of written demand) has expired. Accordingly, under O.C.G.A. § 44-14-550(1), Delta has forfeited any lien it has asserted through its retention of the Engines.

Under Georgia law, Delta's retention of the Engines is therefore unlawful and Mesa is entitled to an order compelling Delta to immediately return the Engines.

38. Pursuant to O.C.G.A. § 44-14-550(7), Mesa also seeks damages in an amount to be proven at trial for Delta's bad faith refusal to return the Engines.

### Count II – Claim for Mandatory Injunctive Relief

39. Mesa incorporates and realleges the preceding paragraphs of this complaint as though fully set forth here.

40. As described above, Delta's actions – including its unlawful retention of the Engines and bad-faith refusal to return them to Mesa – have jeopardized Mesa's operations and its regional carrier contracts with other airlines. Mesa has no adequate remedy at law and will suffer severe and irreparable harm unless a mandatory injunction issues.

41. Mesa is likely to succeed on the merits of its trover claim – or, alternatively, there exist serious questions going to the merits of the underlying claims – and the balance of hardships tips sharply in Mesa's favor. Additionally, the law and facts clearly favor Mesa and warrant mandatory injunctive relief.

42. Mesa is entitled to a mandatory preliminary and permanent injunction ordering Delta to immediately return the Engines to Mesa.

### Count III – Punitive Damages

43. Mesa incorporates and realleges the preceding paragraphs of this complaint as though fully set forth here.

44. Under Georgia law, O.C.G.A. § 51-12-5.1(b), Delta's actions as described herein constitute willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences, entitling Mesa to recover punitive damages in an amount to be determined at trial.

### Count IV – Attorney's Fees and Expenses of Litigation

45. Mesa incorporates and realleges the preceding paragraphs of this complaint as though fully set forth here.

46. By taking the actions described above, Delta has acted in bad faith, has been stubbornly litigious, and/or has caused Mesa unnecessary trouble and expense.

47. Mesa is entitled to recover its costs and expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

### PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Mesa demands a trial by jury and prays for judgment on their complaint as follows:

(a) An order compelling Delta to immediately return the Engines to Mesa;

(b) That Mesa recover a sum pursuant to O.C.G.A. § 44-12-151(3) representing the reasonable hire, if any, of the Engines for the time period between the date Delta's lien was forfeited and the date upon which the Engines are returned to Mesa;

(c) That Mesa recover compensatory damages for Delta's bad faith refusal to return the Engines;

(d) That Mesa recover punitive damages against Delta in an amount to be determined at trial;

(e) That Mesa recover its attorneys' fees and expenses of this litigation pursuant to O.C.G.A. § 13-6-11;

(f) Mandatory preliminary and permanent injunctive relief in the form of an order compelling Delta to immediately return the Engines to Mesa; and

(g) That Mesa receive such other and further monetary or other relief as the Court may deem just and proper.

DATED this 6th day of August, 2008.

                    SNELL & WILMER L.L.P.

By s/Melissa M. Krueger
Joel P. Hoxie
Melissa M. Krueger
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

and

G. Lee Garrett, Jr.
David M. Monde
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053

Attorneys for Mesa Air Group, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF.

s/Melissa M. Krueger

## VERIFICATION

STATE OF ARIZONA )
)
COUNTY OF MARICOPA )

Michael Lotz, being first duly sworn, states that he is the President and Chief Operating Officer of Mesa Air Group, Inc., plaintiff in this action, that he has read plaintiff's attached Verified Complaint, knows the contents thereof and that the contents thereof are true and correct to the best of his knowledge.

Dated this 6th day of August, 2008.

_____

SUBSCRIBED AND SWORN to me before this 6th day of August, 2008 by Michael Lotz.

_____
Notary Public

My commission expires: August 3, 2009

OFFICIAL SEAL
LYNN FLAQUER
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 3, 2009

8996369.1